Steven C. ISAAC, Plaintiff,

v.

**CITY OF NEW YORK, New York City Department of Correction, Kathleen Coughlin, in her individual capacity and as an aider and abettor, Defendants.**

**No. 08 Civ. 3474(PKC).**

United States District Court, S.D. New York.

March 22, 2010.

---

**103.** *Johnson,* 333 U.S. at 14, 68 S.Ct. 367.

**104.** *Id.*

Ambrose Wotor Wotorson, Jr., Law Offices of Ambrose Wotorson, P.C., Brookly, NY, for Plaintiff.

Eric Jay Eichenholtz, NYC Law Department, Office of the Corporation Counsel, New York, NY, for Defendant.

*MEMORANDUM AND ORDER*

P. KEVIN CASTEL, District Judge:

Plaintiff Steven Isaac brings claims of employment discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, as amended by the Civil Rights Act of 1991 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* and 42 U.S.C. §§ 1981 and 1983 against the City of New York, the New York City Department of Correction ("DOC") and DOC Deputy Commissioner Kathleen Coughlin.[1] Plaintiff claims that

---

1. Plaintiff has been represented by counsel throughout this action. Although portions of the record reference plaintiffs race and gender in comparison to other job applicants, the Amended Complaint does not allege a claim for race or gender discrimination, nor does the plaintiff address defendants' arguments about race and gender discrimination in his opposition papers. This Court only addresses those claims raised in the Amended Complaint.

defendants unlawfully discriminated against him on account of his age when he was not promoted to three positions he applied for within the DOC: Assistant Commissioner for Programs and Discharge Planning, Executive Director of Program Development and Director of the Applicant Investigation Unit ("AIU"). Plaintiff also claims that he has been subjected to retaliation for filing a complaint in 2004 which alleged discriminatory practices within the New York City Department of Probation ("DOP"). Plaintiff claims that defendants have retaliated against him by refusing to promote him to three positions within the DOC, by refusing to appoint him to a Staff Analyst title despite the fact that he passed the Civil Service Examination, and by incorrectly listing his telephone number in the City of New York's intranet directory.

Discovery in this case is closed and defendants now move for summary judgment on the grounds that plaintiff has failed to establish a prima facie case of discrimination or retaliation, that plaintiff has failed to identify any evidence that defendants' proffered reasons for their decisions were mere pretext for discrimination, and that plaintiff has failed to come forward with evidence that retaliation was a substantial factor in the employment actions at issue. Rule 56(c), Fed.R.Civ.P.

In addressing defendants' motion, I have considered only plaintiffs version of the facts and such other facts as are not disputed by the plaintiff. Where multiple inferences may be drawn from the facts, I have drawn the inference most favorable to the plaintiff as the nonmovant. *See Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir.2006). For the reasons more fully explained below, the summary judgment motion is granted because no reasonable fact finder could find in plaintiff's favor. Defendants have stated legitimate, non-discriminatory, non-retaliatory reasons for the adverse employment actions at issue and plaintiff has failed to come forward with evidence that the reasons are pretextual nor has plaintiff come forward with evidence that discrimination or retaliation was a substantial factor in the employment actions at issue.

BACKGROUND

Steven Isaac is a 53 year-old African American male. (Plaintiff's Rule 56.1 Statement in Opposition to Defendant's Motion for Summary Judgment ("PL 56.1") ¶ 1; Defendant's Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Def. 56.1") ¶ 1.) He was hired as Deputy Director of the DOC Office of Equal Employment Opportunity ("EEO") in May 2003 after his resignation from the position of Assistant Commissioner for Program Services at the New York City Department of Probation ("DOP"). (Pl. 56.1 ¶¶ 2–3; Def. 56.1 ¶¶ 2–3.)

Following his resignation, plaintiff filed suit against the City of New York, the New York DOP, and two DOP officials in this Court, alleging violations of Title VII, 42 U.S.C. §§ 2000e *et seq.* and 42 U.S.C. §§ 1981 and 1983. (Pl. 56.1 ¶ 4; Def. 56.1 ¶ 4.) The Second Circuit affirmed the district court's finding that plaintiff " 'required an inappropriate level of supervision and oversight,' failed to show the necessary leadership qualities for his position, and made little progress on the project he was hired to undertake—setting up the new Resource Development Units for the DOP." (Pl. 56.1 ¶ 5; Def. 56.1 ¶ 5.)

Plaintiff continued his employment as Deputy Director of the DOC EEO. In 2005, he took a civil service examination to qualify for the title of Staff Analyst. (Pl. 56.1 ¶ 50; Def. 56.1 ¶ 50.) Based on his performance on the test, he was ranked as number 1,277 on the civil service eligible

list for the title of Staff Analyst. (Pl. 56.1 ¶ 50; Def. 56.1 ¶ 50.) In January 2007, after noticing that "several of his staff members had been promoted to permanent civil service positions, while he still had not," plaintiff made an inquiry regarding the timing of his appointment. (Pl. 56.1 ¶ 51.) At that time, the last name certified to the DOC was number 582 on the list. (Pl. 56.1 ¶ 52; Def. 56.1 ¶ 52.) "Because plaintiff's position on the civil service list was not reached, he could not be appointed." (Pl. 56.1 ¶ 52; Def. 56.1 ¶ 52.)

In December 2006, plaintiff applied with the New York City DOC for the position of Assistant Commissioner for Programs and Discharge Planning. (Pl. 56.1 ¶ 8; Def. 56.1 ¶ 8.) DOC Deputy Commissioner Kathleen Coughlin was responsible for selecting a candidate to fill this position. (Pl. 56.1 ¶ 10; Def. 56.1 ¶ 10.) The position entailed, among other tasks, "work[ing] with and coordinat[ing] with outside organizations to select programs to provide services to inmates [and] enhance opportunities for inmates upon their release." (Pl. 56.1 ¶ 12; Def. 56.1 ¶ 12.)

The position was advertised through a job posting, which was modified after Coughlin realized that the requirements had been listed incorrectly. (Pl. 56.1 ¶¶ 13–14; Def. 56.1 ¶¶ 13–14.) The amended job posting required candidates to have "demonstrated management experience in identifying, implementing and evaluating human services programs and/or a larger social service system, particularly focused in achieving measurable outcomes." (Pl. 56.1 ¶ 13; Def. 56.1 ¶ 13.)

Coughlin requested that all applicants, including plaintiff, who had previously submitted applications send in supplemental information to address the additional requirements. (Pl. 56.1 ¶¶ 14–16; Rule 56.1 ¶¶ 14–16.)

Plaintiff submitted the additional information and was selected for an interview. (See Aff. of Ambrose Wotorson, Ex. 3, Letter from Steven Isaac to Kathleen Coughlin dated Jan. 16, 2007). During the interview, Coughlin informed plaintiff that this would be "a high-energy position, [and] it would involve going back and forth to Rikers Island several time[s] during the day at times." (See Dep. Tr. of Steven C. Isaac ("Pl. Dep. Tr.") at 41:25–42:2.)[2] Coughlin asked plaintiff whether he would have any problems with a "high energy job" and he responded that he would not. (Pl. 56.1 ¶ 17.) Coughlin responded, "Good, because I do not want someone who thinks that they can take this position at the end of their career and coast." (Id.) Coughlin also made several references to "the kids" who work on grant writing tasks and "how great they are." (Id.) Plaintiff believed that Coughlin's statements about "the kids" referred to "[o]ther staff members." (Pl. Dep. Tr. at 67:4–6.) Defendants claim that Coughlin was referring to "subordinate employees who perform grant writing duties of the unit [as] part of the New York City Urban Fellows program, which is a college intern program." (Def. 56.1 ¶ 20.) Plaintiff does not dispute that the program exists or offer any evidence to support his subjective im-

---

2. It should be noted that plaintiff "denies" the statement addressing this portion of paragraph 17 of Defendants' Rule 56.1 Statement. The "denial" does not dispute that the statement was made but asserts that additional statements were also made. (See Pl. 56.1 ¶ 17.) Plaintiff testified at his deposition to the statement quoted in text and does not deny that the quoted statement was also discussed at the interview. (Pl. Dep. Tr. at 41:25–42.2.) Accordingly, there is no disputed issue of material fact regarding the fact that the statement was made.

pression of to whom Coughlin was referring.

Coughlin ultimately chose to hire Kimberly Stead, a Caucasian female in her "early 40s" for the position. (Pl. 56.1 ¶ 22; Def. 56.1 ¶ 22.)[3] Stead had considerable experience and Coughlin testified that she selected Stead because "she had a combination—she came from the State of New Hampshire. She had worked as a uniform[ed] staff person for many years and had experience [in] . . . managing uniform issues and integrating them within the program." (Pl. 56.1 ¶ 25; Def. 56.1 ¶ 25.)

In 2007, plaintiff submitted his resume to the New York City DOC for the position of Executive Director of Program Development. (Pl. 56.1 ¶ 26; Def. 56.1 ¶ 26.) The position would have required him to "develop[ ] in-jail programs [and] assist inmates" as well as "coordinat[e] with DOC services to expand their reach and impact and identif[y] community-based services that can be accessed." (*See* Pl. 56.1 ¶¶ 26–27; Rule 56.1 ¶¶ 26–27.) Plaintiff was not interviewed for the position. (Rule 56.1 ¶ 28; Def. 56.1 ¶ 28.) Coughlin was responsible for selecting a candidate to fill the position and she chose Winette Saunders–Halyard, an African American female in her "late 30s." (Pl. 56.1 ¶ 29; Def. 56.1 ¶ 29.) Coughlin testified that she selected Saunders–Halyard for the position based on "a combination of her experience, her motivation, her ideas about what she could bring to the job and what resources she should go in [sic] to help us provide to inmates." (Pl. 56.1 ¶ 30; Def 56.1 ¶ 30.) Coughlin testified that Saunders–Halyard's experience working for the "Agenda for Children of Tomorrow" and "in multiple [correctional] systems and trying to get better services for inmates" also played a

role in her decision. (Pl. 56.1 ¶ 31; Def. 56.1 ¶ 31 (alteration in original).) Coughlin also placed importance on Saunders–Halyard's several years of experience with the Department of Health and Mental Hygiene and her "aggressiveness in perusing resources." (Pl. 56.1 ¶¶ 32–33; Def. 56.1 ¶¶ 32–33.)

Plaintiff also applied for the position of Director of the DOC "AIU" in 2007. (Pl. 56.1 ¶ 35; Def. 56.1 ¶ 35.) "The Director of the AIU oversees and supervises the unit responsible for pre-employment medical, psychological, agility testing and background investigations of candidates for Correction Officer selection." (Pl. 56.1 ¶ 36; Def. 56.1 ¶ 36.) Assistant Commissioner Alan Vengersky was responsible for interviewing and selecting the candidate for the position. (*See* Pl. 56.1 ¶ 38; Def. 56.1 ¶ 38.) Vengersky interviewed five candidates, including plaintiff, for the position and ultimately selected Dr. David Safran, a Caucasian male "in his mid-fifties." (Pl. 56.1 ¶¶ 37–39; Def. 56.1 ¶¶ 37–39.)

Vengersky testified that he selected Safran because of "[h]is experience in the unit" and because "[t]he way he expedited the process for administering and evaluating psych testing . . . was very impressive." (Pl. 56.1 ¶ 42; Def. 56.1 ¶ 42). Vengersky testified that he "realized that [Safran] would be someone who could apply [his skills] not just to features of the psych[ ] process in [AIU], but to other components." (Pl. 56.1 ¶ 42; Def. 56.1 ¶ 42.) Vengersky also testified that plaintiff was his second choice for the position. (Pl. 56.1 ¶ 43; Def. 56.1 ¶ 43.)

Finally, plaintiff alleges that his phone number was listed incorrectly in the citywide intranet directory during his employ-

---

**3.** Plaintiff claims that Sara Gallanger, who is white and in her "late 20s to early 30s" was initially selected for the position of Assistant Commissioner for Discharge Planning, but Stead was later hired for the position. (*See* Pl. 56.1 ¶ 34.)

ment as an act of retaliation. (Pl. 56.1 ¶ 53; Def. 56.1 ¶ 53.) The directory is maintained by the New York City Department of Information Technology and Telecommunications and the DOC did not update the data in the directory from 2003 until at least 2007. (Pl. 56.1 ¶ 54; Def. 56.1 ¶ 54.) Although plaintiff's phone number was listed incorrectly in the directory, his correct email address and the general DOC phone number appeared on the listing. (Pl. 56.1 ¶¶ 55–56; Def. 56.1 ¶¶ 55–56.) Plaintiff reported the problem to the DOC "help desk" via email at 12:33 p.m. on February 13, 2008 and received a response indicating that the phone number had been corrected on February 14, 2008 at 1:37 p.m. (Pl. 56.1 ¶¶ 57–58; Def. 56.1 ¶¶ 57–58.)

## SUMMARY JUDGMENT STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he is entitled to relief. A fact is material if it "might affect the outcome of the suit under the governing law ...." *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law. *Vt. Teddy Bear Co., Inc. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir.2004).

When the moving party has met this initial burden and has asserted facts to demonstrate that the non-moving party's claim cannot be sustained, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts asserted by the movant. Rule 56(e)(2), Fed.R.Civ.P. In raising a triable issue of fact, the nonmovant carries only a "limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84 (2d Cir.2004) (quoting *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir.1993)).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir.1995) (internal quotations and citations omitted); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In reviewing a motion for summary judgment, the court must scrutinize the record, and grant or deny summary judgment as the record warrants. Rule 56(c). In the absence of any disputed material fact, summary judgment is appropriate. *Id.*

Mere "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York.* 88 F.3d 63, 71 (2d Cir.1996) (citing *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348); *see also Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (noting that summary judgment may be granted if evidence is "merely colorable" or "not significantly probative")

(citations omitted). "An opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions." *Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 n. 14 (2d Cir.1981).

■ Although discrimination and retaliation claims usually involve issues of intent, which are often ill-suited to resolution at the summary judgment stage, the Second Circuit has gone "out of [its] way to remind district courts that the 'impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir.2000) (citing *McLee v. Chrysler Corp.*, 38 F.3d 67, 68 (2d Cir.1994)); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) ("[T]rial courts should not treat discrimination differently from other ultimate questions of fact.") (internal quotations omitted).

DISCUSSION

I. *Age Discrimination*

■ Plaintiff raises claims of age discrimination under the ADEA. The ADEA makes it "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Claims that arise under the ADEA are analyzed under the framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 105–107 (2d Cir.2010) (holding that the *McDonnell Douglas* standard applies to ADEA claims).

■ Under *McDonnell Douglas*, the plaintiff first has the burden of proving a prima facie case of discrimination by a preponderance of the evidence. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to come forward with evidence supporting a legitimate, nondiscriminatory basis for its actions. Finally, the plaintiff must then prove by a preponderance of the evidence that the reasons proffered by the defendant were merely pretextual. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207(1981).

a. *Plaintiff Has Failed to Make Out a Prima Facie Case of Age Discrimination.*

■ To establish a prima facie case of employment discrimination under the ADEA, the plaintiff must show "(1) that [he] was within the protected age group, (2) that [he] was qualified for the position, (3) that [he] experienced [an] adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski*, 596 F.3d at 107 (2d Cir.2010). The plaintiff's burden in establishing a prima facie case is "not a heavy one." *Id.*

■ Plaintiff has established a prima facie case of age discrimination with respect to his application for employment as Assistant Commissioner for Program Services and Discharge Planning. As a 53 year-old, the parties do not dispute that plaintiff is a member of a protected class. Nor do the parties dispute that plaintiff was qualified for the position or that failure to promote constituted an adverse employment decision. Therefore, in order to set forth a prima facie case, plaintiff need only establish that the failure to promote took place in circumstances giving rise to an inference of age discrimination.

After submitting his application, plaintiff was selected for an interview with Deputy Commissioner Kathleen Coughlin. (*See e.g.,* Pl. 56.1 ¶ 17; Def. 56.1 at 17.) During the interview, Coughlin told plaintiff that the position was a "high energy job" and asked whether plaintiff believed he would have any problems with the "high energy" nature of the job. (Pl. 56.1 ¶ 17.) Plaintiff answered "no" and Coughlin responded: "Good, because I do not want someone who thinks that they can take this position at the end of their career and coast." (*Id.*) Coughlin also made statements during the interview which referred to "kids" doing certain tasks related to the position, such as grant writing. (*See id.*) Coughlin's statements, made in the context of a job interview, are sufficient to raise an inference of age discrimination.

Plaintiff has not set forth circumstances giving rise to an inference of age discrimination with respect to either of the other positions at issue. In fact, plaintiff makes no allegations related to age with respect to those positions except to describe the recipients of the positions: one an African American female in her "late 30s" and the other a Caucasian male "in his mid-fifties." (Pl. 56.1 ¶¶ 29, 38–39; Def. 56.1 ¶¶ 29, 38–39.)

b. *Legitimate, Non–Discriminatory Reason*

■ Where a plaintiff establishes a prima facie case of age discrimination, the defendants must come forward with a legitimate, non-discriminatory reason for the adverse employment action. Because of my conclusion that plaintiff has not made out a prima facie case of age discrimination as to the positions other than that of Assistant Commissioner for Program Services and Discharge Planning, I need go no further as to those other positions. Nevertheless, I will proceed to address defendants' argument that, even if a prima facie case were established, they have come forward with evidence of legitimate, non-discriminatory reasons for the decisions not to hire plaintiff for any of the positions, including Assistant Commissioner for Program Services Discharge Planning.

Under the *McDonnell Douglas* burden-shifting framework, after the plaintiff has come forward with evidence to make out a prima facie case, the burden shifts to the defendant to produce evidence in support of its asserted legitimate, nondiscriminatory reason for the adverse employment action. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

■ Here, defendants have come forward with evidence of a legitimate, nondiscriminatory reason for not promoting plaintiff to any of the positions he sought: defendants hired applicants whom they believed had better qualifications and were best-suited for the positions at issue.

i. *Assistant Commissioner for Program Services and Discharge Planning*

Exercising her discretion, Coughlin selected Kimberly Stead, a Caucasian female estimated to be in her "early 40s" to fill the position of Assistant Commissioner for Program Services and Discharge Planning. (Pl. 56.1 ¶ 22; Def. 56.1 ¶ 22.) Coughlin testified that Stead was chosen because "she had a combination—she came from the state of New Hampshire. She had worked as a uniform[ed] staff person for many years and had experience [in] ... managing uniform issues and integrating them within the program." (Pl. 56.1 ¶ 25; Def. 56.1 ¶ 25.) Stead also had more than 15 years of experience working for the

DOC at the time of her selection. (*See* Pl. 56.1 ¶ 23; Def. 56.1 ¶ 23.) Plaintiff acknowledges that Stead had "managed services to assist inmates and developed and implemented programs to assist inmates in their transition after their discharge from prison," but notes that he "had comparable experience." (*See* Pl. 56.1 ¶ 24; Def. 56.1 ¶ 24.)

### ii. *Executive Director of Program Development*

Coughlin selected Winette Saunders–Halyard, an African American female in her "late 30s" for the position of Executive Director of Program Development. (Pl. 56.1 ¶ 29; Def. 56.1 ¶ 29.) Coughlin testified that she selected Saunders–Halyard based on "a combination of her experience, her motivation, her ideas about what she could bring to the job and what resources she should go in [sic] to help us provide to inmates." (Pl. 56.1 ¶¶ 30–33; Def. 56.1 ¶¶ 30–33.)

### iii. *Director of the DOC Applicant Investigation Unit*

Vengersky selected Dr. David Safran, a Caucasian male in his "midfifties" for the position. (Pl. 56.1 ¶¶ 38–39; Def. 56.1 ¶¶ 38–39.) Vengersky testified that he selected Safran because of Safran's experience with the unit. (Pl. 56.1 ¶ 42; Def. 56.1 ¶ 42.) Vengersky further testified that he was impressed by "[t]he way [Safran] expedited the process for administering and evaluating psych testing" and he "realized that [Safran] would be someone who could apply that not just to features of the psych[ ] process in [AIU], but to other components." (Pl. 56.1 ¶ 42; Def. 56.1 ¶ 42.) Vengersky informed plaintiff that he was Vengersky's second choice for the position, but that Safran was chosen "because of his long tenure in the unit and he would be best suited for the position because of his length of service in the unit." (Pl. 56.1 ¶¶ 43–45; Def. 56.1 ¶¶ 43–45.)

In moving for summary judgment, defendants have come forward with legitimate, non-discriminatory reasons for the decisions to hire those selected for the positions at issue instead of plaintiff. In doing so, defendants have met their burden under the *McDonnell Douglas* framework.

### c. *Pretext*

■ When the defendants have come forward with evidence of their legitimate, non-discriminatory reasons for the adverse employment actions at issue, the presumption of discrimination in favor of plaintiff is erased. *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097. At this point, the burden shifts back to the plaintiff to prove that the non-discriminatory basis for the adverse action is mere pretext, and the defendants' true intent was discriminatory. *Id.* The burden of establishing pretext is a higher burden than that required to establish the prima facie case, and the Second Circuit has instructed that plaintiffs "initially vague allegation of discrimination" must be "increasingly sharpened and focused" at this stage. *Meiri v. Dacon*, 759 F.2d 989, 995 (2d Cir.1985) (affirming summary judgment in favor of defendant).

■ "[A] reason cannot be proved to be a 'pretext for *discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (emphasis in original). "[L]iability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision." *Reeves*, 530 U.S. at 141, 120 S.Ct. 2097. The Supreme Court's recent decision in *Gross v. FBL Financial Services, Inc.* instructed courts that "a plaintiff bringing a disparate treatment claim pursuant to the ADEA must prove, by a preponderance of the

evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision" and not just a contributing or motivating factor. ——— U.S. ———, 129 S.Ct. 2343, 2351, 174 L.Ed.2d 119 (2009); *see also Gorzynski,* 596 F.3d at 106–07.

Plaintiff has come forward with no evidence that could reasonably support an inference of pretext for discrimination, and thus his claim fails under the third step of the *McDonnell Douglas* framework. Plaintiff offers no evidence that defendants' proffered reasons for promoting the selected individuals instead of plaintiff are a pretext for discriminatory animus. Plaintiff testified that the basis for his claims concerning his non-selection for the above-described positions is that he was "qualified" and he should have received the positions. (Pl. 56.1 ¶¶ 47–48; Def. 56.1 ¶¶ 47–48.) Such conclusory and speculative statements are insufficient to withstand a motion for summary judgment. Furthermore, plaintiff offers no evidence to rebut defendants' assertions that the individuals selected were better-suited for the positions at issue. Instead, plaintiff only asserts that he had "comparable" experience. (*See* Pl. 56.1 ¶¶ 24, 30, 31, 32, 33, 38, 39, 40, 41, 42, 46.) Also, with respect to the position of Director of the DOC AIU, plaintiff testified that, although he believes that his work experience was comparable to that of Dr. Safran, he has no reason to believe that Vengersky's explanation of his decision was untrue. (*See* Pl. 56.1 ¶ 46; Def. 56.1 ¶ 46.)

Viewing the record as a whole and drawing all inferences in plaintiff's favor, I conclude that no reasonable finder of fact could conclude that the legitimate reasons for the adverse actions at issue offered by defendants were pretext for discrimination. Plaintiff's claims for employment discrimination in violation of the ADEA are dismissed.

## II. *Retaliation Claims*

Plaintiff alleges that defendants retaliated against him because he "publicly opposed defendants' discriminatory practices in a prior lawsuit." (Am. Compl. ¶ 17.) Plaintiff claims that the defendants' failure to promote him to any of the three above-described positions was the result of retaliation. He also claims that defendants retaliated against him by not appointing him to a Staff Analyst title and by listing his telephone number incorrectly in the city-wide Intranet Directory.

### a. *Title VII and Section 1981 Retaliation*

■ Plaintiff claims that defendants unlawfully retaliated against him in violation of Title VII and section 1981. Title VII's anti-retaliation provision makes it unlawful "for an employer to discriminate against any ... employee[ ] ... or applicant[ ] ... because that [individual] opposed any practice made unlawful by [Title VII] or ... made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). Section 1981 encompasses claims of retaliation. *CBOCS West Inc. v. Humphries,* 553 U.S. 442, 128 S.Ct. 1951, 170 L.Ed.2d 864 (2008), and such claims are analyzed pursuant to Title VII principles. *Hicks v. Baines,* 593 F.3d 159, 164 (2d Cir.2010).

■ Retaliation claims under Title VII and section 1981 are evaluated under a three-step burden-shifting analysis. *Id.* "First, the plaintiff must establish a prima facie case of retaliation by showing: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse em-

ployment action." *Id.* (internal quotations omitted). "The plaintiffs burden is *de minimis.*" *Id.* "[T]he court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Id.*

If the plaintiff establishes a prima facie case, the burden shifts to defendants to "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Id.* If so, the presumption disappears and the plaintiff carries the burden of establishing that "retaliation was a substantial reason for the adverse employment action." *Id.* A plaintiff may establish that retaliation was a substantial reason for the adverse employment action by "proving that 'a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause.'" *Id.*

### i. *Prima Facie Case*

Plaintiff claims that defendants retaliated against him because he filed a claim in federal court on June 28, 2004 claiming discrimination and retaliation arising out of his opposition to the proposed termination of Elton Maynard, an African American DOP employee. *Isaacs v. City of New York, et al.,* 04 Civ. 5108(PAC), 2005 WL 3466051.[4]

Plaintiff seems to suggest, for the first time in his opposition papers, that the fact that defendants were aware of plaintiffs State Division of Human Rights Complaint ("SDHR Complaint") and plaintiffs January 19, 2007 letter to Alan Vengersky is sufficient evidence to demonstrate that discriminatory animus played a role in plaintiff's non-selection for the various positions at issue. (*See* Opp. Mem. at 12.)[5] The Amended Complaint does not allege that either of these actions constituted protected activity for which he has suffered retaliation. Instead, it alleges that plaintiff was retaliated against "because he publicly opposed defendants' discriminatory practices in a prior lawsuit" and plaintiff has acknowledged that the 2004 complaint is the protected activity underlying his retaliation claims. (Am. Compl. ¶ 17; *see also* Pl. Dep. Tr. 76:12–18; *see also* Pl. Opp. Br. at 11 (arguing that the adverse actions were motivated "by animus toward his prior

---

4. An order granting summary judgment in favor of the defendants was issued on December 16, 2005 for all claims except the First Amendment retaliation claims against defendants Levy and Marchiano. *See Isaacs v. City of New York,* 2005 WL 3466051 (S.D.N.Y. Dec. 16, 2005). Those remaining claims were tried before a jury and, on July 13, 2006, the jury returned a unanimous verdict in favor the defendants. Plaintiff thereafter filed a motion for a directed verdict which was denied on August 25, 2006. Plaintiff filed a notice of appeal on September 27, 2006. The appeal was dismissed on December 5, 2006 because it did not comply with Second Circuit filing requirements. The record was subsequently resubmitted and the district court's judgment was affirmed in a summary order issued on March 26, 2008. *Isaac v. City of New York,* 271 Fed.Appx. 60 (2d Cir.2008).

5. The SDHR Complaint contains, among other things, allegations based on the same underlying acts as the Amended Complaint in this case. (*See* Eichenholtz Decl. Ex. B (Charge One: retaliation in the form of failure to correct telephone number on citywide intranet directory; Charge Two: retaliation in the form of failure to promote to staff analyst position; Charge Three: discrimination and retaliation in the form of failure to hire for "scores of positions with agencies in the City of New York"; Charges Six and Seven: discrimination and retaliation in the form of failure to hire for the position of Assistant Commissioner for Program and Discharge Planning at the DOC).) The SDHR issued a determination that there was no probable cause on November 6, 2007 and issued a Right to Sue letter on January 10, 2008. (Pl. 56.1 ¶¶ 62–63.) Plaintiff thereafter filed this action on April 9, 2008.

protected activity in filing a claim in federal court ...").)

Plaintiff also does not allege that the adverse employment actions at issue were caused by the filing of the SDHR Complaint, nor could he with respect to any of the actions that occurred before its filing on April 6, 2007. (*See* Eichenhotz Decl. Ex. B, Verified Complaint, *Isaac v. City of New York, Dep't of Correction,* Case No. 10117226.) Furthermore, plaintiff does not state whether any of the adverse employment actions at issue occurred after that filing. (*See* Pl. 56.1 ¶¶ 8, 26, 35, 50–51, 55; Def. 56.1 ¶¶ 8, 26, 35, 50–51,55.)

The letter dated January 17, 2007 to Vengersky does not complain of discrimination. In that letter, plaintiff asks questions about the hiring process and the timing of his promotion to a staff analyst title. (*See* Eichenholtz Decl. Ex. H.) The Amended Complaint does not allege that plaintiff suffered retaliation for sending this letter.

■ Plaintiff may not use his submission in opposition to summary judgment as a back door means to amend the complaint. *See Redd v. Wright,* 597 F.3d 532, 539 (2d Cir.2010) (claim was not properly before the district court because it was not alleged in the complaint); *see also Wright v. Ernst & Young LLP,* 152 F.3d 169, 178 (2d Cir.1998). Because the Amended Complaint claims that plaintiff was retaliated against "because he publicly opposed defendants' discriminatory practices in a prior lawsuit," the Court will analyze the claim as such, irrespective of the possible recharacterization in plaintiff's opposition to the present motion. Even if these activities had been included in the Amended Complaint, plaintiff offers no evidence from which a reasonable factfinder could conclude that retaliation played a substantial role in the adverse employment actions at issue. At most, he can establish defen-

dants' awareness of his protected activity which standing alone is insufficient. *See Hicks,* 593 F.3d at 164 (defendant's awareness is only one element of a prima facie case).

■ The parties agree that the filing of the complaint in opposition to discriminatory practices was a protected activity for purposes of Title VII and section 1981. The parties also agree that the defendants were aware of the plaintiff's participation in the protected activity. Plaintiff asserts that he has been subjected to three adverse employment actions in retaliation for his filing of the 2004 complaint: (1) defendants refused to promote plaintiff to any of the three above-described positions within the DOC; (2) defendants refused to promote plaintiff to a Staff Analyst title; and (3) defendants listed an incorrect telephone number on the citywide intranet directory.

■ Employment actions are materially adverse if they are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 57, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). Although anti-retaliation protection is broader than anti-discrimination protection, Title VII "does not set forth 'a general civility code for the American workplace.'" *Id.* at 68, 126 S.Ct. 2405. "'[P]etty slights or minor annoyances that often take place at work and that all employees experience' do not constitute actionable retaliation." *Hicks,* 593 F.3d at 165 (quoting *Burlington,* 548 U.S. at 68, 126 S.Ct. 2405). The standard is an objective one, but "[c]ontext matters." *Burlington,* 548 U.S. at 69, 126 S.Ct. 2405. Acts of retaliation need to be "considered both separately and in the aggregate, as even minor acts of retaliation can be suffi-

ciently 'substantial in gross' to be actionable." *Hicks,* 593 F.3d at 165.

■ The failure to promote an employee may amount to an adverse employment action. *See, e.g., Dillon v. Morano,* 497 F.3d 247, 251 (2d Cir.2007). Therefore, the defendants' decisions not to promote plaintiff to one of the DOC positions or to the Staff Analyst title qualify as adverse employment actions.

■ However, with respect to plaintiffs allegation that defendants included an incorrect telephone number in the citywide intranet directory, plaintiff acknowledged that he did not "have any knowledge of any person or persons in management taking any action to make sure [his] number was incorrect or not changed." (Pl. Dep. Tr. 62:13–17.) Defendants' failure to update data in the directory might have been a minor annoyance, but no reasonable factfinder could conclude that it would dissuade a reasonable worker from making or supporting a charge of discrimination and, therefore, does not constitute an adverse employment action for purposes of plaintiff's retaliation claims.

Defendants argue that plaintiff has failed to establish the fourth element of a prima facie case, a causal connection between the protected activity and the adverse employment action, with respect to all of the employment actions at issue.

Plaintiff offers no evidence that there was a causal connection between the filing of his 2004 complaint and any of the adverse employment actions, with the exception of evidence that the 2004 complaint was filed and that defendants were aware of it. Plaintiff testified that, although defendants were aware of the 2004 complaint, he did not recall anyone in the DOC ever discussing it. (*Id.* at 72:6–20.) Plaintiff further testified that his belief that the

actions at issue were retaliatory was based on the fact that

"[he] applied for several positions which [he] fe[lt] that [he was] qualified for, some of which [he had] not even been granted an interview, some of which [he'd] been granted an interview and fe[lt] that [he] was qualified for and should have gone further and [he] not only [did] not receive[ ] the positions, but [he did] not receive[ ] any—with the exception of Allan Vengersky calling [him]—[he did] not receiv[e] any courtesy with regard to calling and saying we're sorry you're not qualified—we chose somebody else."

(*Id.* at 56:21–25, 57:1–4.) Indeed, plaintiff acknowledges that retaliation was not a substantial factor in defendants' failure to promote him to the Staff Analyst title. (Pl. 56.1 ¶ 52, Def. 56.1 ¶ 52.)

■ Defendants' awareness of the 2004 complaint, alone, is insufficient to establish a prima facie case of retaliation; awareness of the protected activity is only one element of a prima facie case. *See Hicks,* 593 F.3d at 164. Plaintiff is required to offer evidence of a causal relationship between the protected activity and the adverse employment action.

■ "In this Circuit, a plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by 'showing that the protected activity was closely followed in time by the adverse [employment] action.'" *Gorman–Bakos v. Cornell Co-op. Extension of Schenectady County,* 252 F.3d 545, 554 (2d Cir.2001). In his memorandum in opposition to the motion, plaintiff makes no assertion that a causal connection might be inferred from temporal proximity between his protected activity and the adverse employment actions at issue. Nevertheless, the Court will consider whether the undis-

puted facts in the record could reasonably support such an inference.

■ In order for "mere temporal proximity between an employer's knowledge of [a] protected activity and an adverse employment action" to serve as sufficient evidence of a causal connection to establish a prima facie case, courts "uniformly hold that the temporal proximity must be 'very close.'" *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). The Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman–Bakos,* 252 F.3d at 554. While there is no bright line rule, it is important that courts consider the context of particular cases in exercising judgment and drawing permissible inferences from temporal proximity. *See Espinal v. Goord,* 558 F.3d 119, 122, 129 (2d Cir.2009) (holding that an inference of causation was permissible when the retaliation occurred one and a half years after the complaint was filed, and 6 months after termination of the case, in circumstances where defendants had threatened to kill plaintiff and told him that "this is what happens to [i]nmates when they submit law suits against us" because it was "plausible that the [defendants] waited to exact their retaliation at an opportune time—as when [plaintiff] was involved in a fight with another inmate-in order to have a ready explanation for any injuries suffered by [plaintiff]"); *compare Hollander v. Am. Cyanamid Co.,* 895 F.2d 80, 85–86 (2d Cir.1990) (finding a lack of evidence of a causal connection where failure to promote occurred three months after the EEOC complaint was filed) *with Grant v. Bethlehem Steel Corp.,* 622 F.2d 43, 45–46 (2d Cir.1980) (holding that a causal connection was indicated despite a lapse of eight months between an EEOC complaint and the retaliatory action).

Plaintiff filed the complaint in *Isaacs v. City of New York, et al.,* 04 Civ. 5108(PAC), 2005 WL 3466051, on June 28, 2004. The jury found in defendants' favor on July 13, 2006. A notice of appeal was filed in September 2006 and the decision was affirmed on March 26, 2008.

■ Although plaintiff does not indicate the date upon which the first adverse employment action occurred, the record indicates that the postings for the positions at issue were from November 29, 2006 until December 17, 2006 and that plaintiff communicated regarding that position in January 2007. (*See* Wotorson Aff. Exs. 2 and 3.) Therefore, the decision to hire another applicant instead of plaintiff occurred approximately two and a half years after plaintiff filed his complaint. A period of two and a half years between the employer's knowledge of a protected activity and the adverse employment action, without more, would be insufficient to establish a temporal nexus from which a causal connection may be inferred. *See Clark County,* 532 U.S. at 274, 121 S.Ct. 1508 ("Action taken … 20 months later suggests, by itself, no causality at all.").

Plaintiff does not put forth any argument or evidence that a date after the date of filing should be used for purposes of determining whether a temporal nexus exists. Neither party raised the possibility that causation could be determined based on a temporal nexus and, if so, whether the Court should consider the date upon which the complaint was filed, or a later date given the fact that the plaintiff was participating in ongoing litigation. I will generously assume, without deciding, that plaintiff's ongoing activity lasted from the filing of his complaint in June 2004 until the appeal was decided in March of 2008. Be-

494

cause the adverse actions at issue occurred within that time period, I will assume, without deciding, that there was a temporal nexus sufficient to establish a causal connection for purposes of proving a prima facie case.

ii. *Legitimate, Non–Retaliatory Basis*

 Where the plaintiff demonstrates a prima facie case of retaliation, defendants must offer legitimate, non-retaliatory reasons for the employment actions at issue. This burden is one of production, not persuasion. *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097. With respect to the three DOC positions, as discussed above, defendants state that plaintiff was not selected because other candidates were better-qualified for the positions. *See supra* (b)(i)-(iii).

With respect to the allegation that the failure to promote plaintiff to the Staff Analyst title was an act of retaliation, defendants explain, and plaintiff acknowledges, that plaintiff was ranked number 1,277 on the civil service eligible list for the title, based on his performance on the civil service test that he took in 2005. (Pl. 56.1 ¶ 50; Def. 56.1 ¶ 50.) The last name certified to the DOC was list number 582. (Pl. 56.1 ¶ 52; Def. 56.1 ¶ 52.) Plaintiff admits that "[b]ecause [his] position on the civil service list was not reached, he could not be appointed." (Pl. 56.1 ¶ 52; Def. 56.1 ¶ 52.)

Because incorrectly listing plaintiffs telephone number on the citywide intranet directory did not constitute an adverse employment action, I need not go any further as to that claim. Nonetheless, I will address defendants' contention that, even if it were an adverse employment action, they have offered legitimate, non-retaliatory reasons for the incorrect listing and plaintiff has failed to offer evidence demonstrating that retaliation was a substantial reason for the action. Defendants also

explain, and the plaintiff acknowledges, that they did not maintain the citywide intranet directory and that the DOC data in the directory was not updated from 2003 until at least 2007. (PL 56.1 ¶ 54; Def. 56.1 ¶ 54.) Also, the error was corrected the day after it was reported. Plaintiff acknowledges that he emailed the DOC "help desk" at 12:33 p.m. on February 13, 2008 to report the problem and it was corrected on February 14, 2008 at 1:37 p.m. (Pl. 56.1 ¶¶ 57–58; Def. 56.1 ¶¶ 57–58.)

iii. *Substantial Motivating Factor*

Plaintiff does not offer any evidence that "retaliation was a substantial reason for the adverse employment action[s]." *See Hicks,* 593 F.3d at 164. As discussed more fully above, plaintiff only offers evidence of defendants' awareness of the 2004 complaint and his personal belief that he was qualified for the positions at issue and had "comparable" experience to the selected candidates. Plaintiff offers no evidence regarding defendants' motives beyond the allegations supporting his prima facie case. The inference of causation drawn from the possible temporal nexus, alone, is insufficient to sustain plaintiff's burden. *See, e.g., Forde v. Beth Israel Med. Ctr.,* 546 F.Supp.2d 142, 152 (S.D.N.Y.2008); *see also Simpson v. N.Y. State Dep't of Civil Servs.,* 166 Fed.Appx. 499, 502 (2d Cir.2006) (summary order) ("While temporal proximity … gives rise to an inference of retaliation for purposes of [plaintiff's] prima facie case, without more, such temporal proximity is insufficient to satisfy [plaintiff's] burden to bring forward some evidence of pretext."). Drawing all reasonable inferences in plaintiffs' favor, no reasonable factfinder could conclude that that retaliation was a substantial reason for the adverse employment actions at issue.

To summarize, with respect to the Title VII and section 1981 retaliation claims, this Court assumes that plaintiff has made out a prima facie case as to each alleged failure to promote. Nevertheless, plaintiff has failed to come forward with evidence which, if believed, would permit a reasonable factfinder to find in his favor that the defendants' non-retaliatory reasons for the actions were pretextual or that retaliation was a substantial motivating factor for the actions. Accordingly, summary judgment is granted to defendants on the Title VII and section 1981 retaliation claims.

### b. *First Amendment Retaliation*

■ "[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos,* 547 U.S. 410, 417, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). Plaintiff alleges that defendants retaliated against him in violation of his First Amendment rights because he filed the 2004 complaint.

#### i. *Prima Facie Case*

■ In order to state a prima facie claim for First Amendment retaliation under section 1983, the plaintiff is required to "offer some tangible proof that (1)[his] speech was constitutionally protected, (2)[he] suffered an adverse employment action, and (3) a causal relationship between the two existed in that the speech was a substantial motivating factor for the adverse employment action." *Burkybile v. Bd. of Educ. of Hastinas–on–Hudson Union Free Sch. Dist.,* 411 F.3d 306, 313 (2d Cir.2005).

##### A. *Protected Speech*

■ A public employee's speech is entitled to constitutional protection only when it addresses a matter of legitimate public concern. *Morris v. Lindau,* 196 F.3d 102, 109–10 (2d Cir.1999) (citing *Con-nick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708(1983)). When a public employee's speech is focused on personal matters, it is not considered to be a matter of public concern and the government, acting as an employer, has "wide latitude to manage" the office. *See Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Where an employee's lawsuit seeks to "redress his personal grievances" and does "not seek to advance a public purpose," it does not constitute speech on a matter of public concern. *Ruotolo v. City of New York,* 514 F.3d 184, 189 (2d Cir.2008). As the Second Circuit recently clarified, "a speaker's motive is not dispositive when determining whether his or her speech addresses a matter of public concern." *Sousa v. Roque,* 578 F.3d 164, 173 (2d Cir.2009). Nevertheless, a lawsuit that is "personal in nature and generally relate[s] to [plaintiff's] own situation" is not speech on a matter of public concern. *Huth v. Haslun,* 598 F.3d 70, 74–75 (2d Cir.2010).

■ The question of whether speech is protected is a question of law. *See Rankin v. McPherson,* 483 U.S. 378, 386 n. 9, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). A court determines whether speech addresses "a matter of legitimate public concern" by examining the content, form and context of the plaintiff's statements. *Pickering v. Bd. of Educ.,* 391 U.S. 563, 571–72, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The court should look to the "primary aim" of the complaint. *Ezekwo v. New York City Health & Hosp. Corp.,* 940 F.2d 775, 781 (2d Cir.1991) (concluding that plaintiff's speech regarding the quality of a physician's training program did not constitute a matter of public concern where plaintiff "was not on a mission to protect the public welfare. Rather her primary aim was to protect her own reputation and individual development as a doctor.").

Plaintiff alleges that he filed the 2004 complaint to "publicly oppose[ ] defendants' discriminatory practices." (Am. Compl. ¶ 17.) He argues that because the court in the 2004 case, *Isaacs v. City of New York*, 04 Civ. 5108(PAC), 2005 WL 3466051, held that he had stated a claim for First Amendment retaliation, this Court should find that any acts in retaliation for the filing of the 2004 complaint also violate of the First Amendment. *See Isaacs v. City of New York*, 2005 WL 3466051 (S.D.N.Y. Dec. 16, 2005). This reasoning is flawed.

The 2004 complaint sought redress for personal grievances, including a lateral transfer that plaintiff considered to be a demotion. *See id.* The fact that the underlying speech supporting his claim for First Amendment retaliation in the 2004 complaint qualified as a matter of public concern does not necessarily mean that the complaint filed by plaintiff to redress his grievances instantly became a matter of public concern. *See Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir.1993) (holding that an employee's complaint about sex discrimination was not speech on a matter of public concern because it was "motivated by and dealt with her individual employment situation").

Isaac testified at his deposition that he brought his previous lawsuit because "they discriminated against [him] on the basis of [his] race and . . . they violated [his] First Amendment Rights." (Pl. Dep. Tr. 48:13–22.) The 2004 complaint sought damages for Isaac's personal "mental anguish, humiliation, embarrassment, and emotional injury," punitive damages, and an "injunction against adverse actions." (*See* Complaint, *Isaacs v. City of New York, et. al.*, 04 Civ. 5108(PAC), 2005 WL 3466051). "Significantly, there is no suggestion in this record that [Isaac] wanted to debate issues of . . . discrimination, that [his 2004]

suit sought relief against pervasive or systemic misconduct by a public agency or public officials, or that [his] suit was part of an overall effort . . . to correct allegedly unlawful practices or bring them to public attention." *See Huth*, 598 F.3d at 75 (2d Cir.2010). Because plaintiffs 2004 complaint sought redress for personal grievances, such as the reassignment of his job title, it is not protected because it does not qualify as speech on a matter of public concern.

▮ Even if this were protected speech, plaintiff has failed to demonstrate that there was any causal connection between the lawsuit and the alleged retaliatory acts. *See White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1058–59 (2d Cir. 1993). In order to demonstrate the necessary causal connection, plaintiff must show that the lawsuit was "at least a 'substantial' or 'motivating' factor" in defendants' alleged retaliatory acts. *Id.* This requires that plaintiff establish that, absent the filing of his lawsuit, the alleged retaliatory actions would not have occurred. *See Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir.1999).

As discussed above, plaintiff only makes conclusory statements about defendants' intentions and cites no evidence of a causal connection between the employment actions at issue and the 2004 complaint. *See supra* at II(a)(iii). Moreover, defendants have provided a legitimate, non-discriminatory reason for each of the alleged retaliatory acts. *See supra* at II(a)(ii). Plaintiff has failed to come forward with evidence that their reasons were pretextual or that retaliatory motive was a substantial factor in defendants' decisions.

Because defendants have shown that they would have taken the same actions even if plaintiff had never filed the lawsuit, and plaintiff has failed to offer evidence of a causal connection, no rational fact finder

could decide in plaintiffs favor even if the 2004 complaint constituted protected speech. Therefore, the First Amendment retaliation claims are dismissed.

Because all claims are dismissed pursuant to Rule 56, I need not reach the issues of whether defendant Coughlin is entitled to qualified immunity and whether the New York City DOC can be held liable for actions of its employees under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

CONCLUSION

The defendants' motion for summary judgment is granted. (Docket No. 16.) The Clerk shall enter judgment in favor of defendants.

SO ORDERED.